In the Matter of the Liability for Unemployment Insurance Contributions, under Article 18 of the Labor Law, of CLARENCE SCOTT, Individually, and CLARENCE SCOTT AND COMPANY, Employers, Appellants.

FRIEDA S. MILLER, as Industrial Commissioner, Respondent.

Third Department, October 31, 1940.

*Coleman Taylor*, for the appellants.

*John J. Bennett, Jr.*, Attorney-General, and *Henry Epstein*, Solicitor-General [*W. Gerard Ryan* and *Francis R. Curran*, Assistant Attorneys-General, of counsel], for the respondent.

BLISS, J. For several years prior to August 7, 1937, Clarence Scott was engaged in the business of painting, papering and interior decorating in the city of Amsterdam, N. Y. He employed a number of painters and paid contributions to the Unemployment Insurance Fund as a covered employer on his payroll for the period from May 15, 1937, to August 7, 1937. On this latter date he made a written agreement with seven painters, four of whom were former employees of his, by which they purported to form a partnership to conduct a painting, wall-papering and interior decoration business. The first alleged partnership was dissolved on April 24,

1939, and a new written agreement executed by Clarence Scott and four of the so-called partners. One of the former partners continued after the dissolution to work for the new firm as an employee. The question then arose as to whether or not the moneys paid these men were wages and subject to the payment of unemployment insurance contributions. After a hearing the referee found that no partnership existed and the written agreement was a mere subterfuge conceived for the purpose of avoiding unemployment insurance contributions. He held that the writing was not entered into with any intention of its partnership features being honored by any of the partners and that no valid partnership existed. Upon an appeal the Unemployment Insurance Appeal Board found that an agreement was actually entered into but that this agreement failed as a matter of law to destroy the individual identity as employees and that the agreement itself did not constitute a partnership. The Board also affirmed the decision of the referee.

Under the original agreement Clarence Scott provided the equipment and the capital, procured the business and acted as manager, treasurer and bookkeeper. The other partners were permitted to draw on the firm's account but only on a daily or weekly basis, with no withdrawals except for days, weeks or months actually devoted to work for the partnership. As to Clarence Scott, he received $5,000 per year, payable monthly, and bore all losses up to $5,000 yearly. Profits beyond the foregoing items of expense were to be shared and losses beyond the $5,000 charged to Clarence Scott borne equally by the partners.

It is to be noted first of all that the partners other than Scott were paid only for time actually worked at a rate suggesting the appropriate hire for their respective work. Clarence Scott, on the other hand, supplied capital and equipment and ran the business, not actually doing any painting work, at $5,000 per year. The comparative scale of pay for the other partners suggests wages for work actually performed rather than proportionate shares of profits. Section 11 of the Partnership Law provides that sharing the profits of a business is *prima facie* evidence that one is a partner but not " 4 * * * if such profits were received in payment: * * * (b) As wages of an employee * * *."

Moreover, Clarence Scott's furnishing capital and equipment, and running the business and taking $5,000 per year, are more consonant with his ownership and operation of an enterprise for profit for himself than of a sharing of the nature typical of partnerships. The provision for the losses of the enterprise to be borne up to $5,000 by Mr. Scott, together with the provision for his taking $5,000 from the business as his share, have the appearance of being in the nature of a guaranty of wage to the other members

of the partnership with Mr. Scott bearing the risks of business operations. Due to this provision, wages would be paid to the other partners for work as actually performed by them per day or per week with Mr. Scott bearing the usual risk of owning and running a business that after the payment of actual operating expense, including labor, there would be a loss at the end of the year not borne by the partners, but by Mr. Scott. Actually, no profits were ever divided. Considering the size and type of enterprise, this $5,000 spread for or against Mr. Scott appears to be an estimate of the position of an owner attempted to be clothed in partnership form.

The decision of the Unemployment Insurance Appeal Board should be affirmed, with costs.

HILL, P. J., CRAPSER and SCHENCK, JJ., concur; HEFFERNAN, J., dissents, with an opinion.

HEFFERNAN, J. (dissenting). For twenty years prior to August 7, 1937, Clarence Scott was engaged in business as a painter and paperhanger in the city of Amsterdam, N. Y. He employed a number of men to assist him and owned the necessary materials and equipment for the successful conduct of his trade.

On the latter date he entered into a partnership agreement, which was to exist for five years, with seven other persons, four of whom were his former employees, for the continuance of the business under the name of Clarence Scott and Company.

The pertinent provisions of that agreement are: Mr. Scott was to provide the capital for the business and was to act as its manager, treasurer and bookkeeper; all partners were to devote their time and skill to the business; each partner, with the exception of Scott, who was to receive an annual compensation of $5,000 per annum, payable in monthly installments, was permitted to draw a weekly sum in anticipation of expected profits, the amount, however, to be dependent upon the number of days which each had devoted to the business; all moneys earned by the partnership, in excess of the sums so withdrawn, were to be divided equally among the partners; losses up to $5,000 were to be borne by Scott; those in excess of that figure were apportioned equally among the partners; provision was also made whereby the partnership might secure health and accident insurance upon its members, the premiums therefor to be paid out of profits. The contract also provided that any one partner, at any time, might bring about a dissolution of the partnership by giving the other members a written notice to that effect.

The partnership was dissolved on April 24, 1939, by the withdrawal of three of its members. On the following day the other five members of the old partnership formed a new one containing

substantially the same features as the prior agreement with the exception that in the new contract Scott's salary was fixed at $2,500 instead of $5,000.

The Industrial Commissioner determined that the contract of August 7, 1937, did not constitute a valid partnership arrangement and demanded the payment of contributions to the Unemployment Insurance Fund on the amount each partner had drawn from the partnership. On the application of appellants a hearing was had before a referee and he held that the persons who entered into the agreement with Scott were his employees and not his partners. That decision was affirmed on appeal by the Unemployment Insurance Appeal Board and from the latter determination appellants have come to this court.

The sole question before us is whether the agreement in question constitutes a partnership or a tenure of employment. The facts are not in dispute although in the memoranda of the referee and the Appeal Board they are quite frequently distorted.

The referee found that the partnership agreement was not entered into in good " *favor* nor with any intention of its partnership features being honored by any of the partners." There is not a scintilla of evidence in the record to sustain that finding. The Appeal Board found " *as a matter of law* " that no valid partnership came into existence. In her brief respondent also asserts that " as a matter of law " the record demonstrates that Scott was an employer and not a partner of those associated with him. The record will be searched in vain for such proof. It is also asserted that Scott owned all the partnership assets. The proof is that he held title, not to the assets of the firm, but only to the property which he personally owned and contributed to the firm's use. The partnership assets were vested in the partners. The Board also found that the sums received by the partners were for services currently performed. That finding is also without proof to sustain it. For obvious reasons some limitation had to be placed on the amount which each partner might withdraw from the business. Another reason assigned by the Board for refusing to recognize the partnership is the finding that the partners did not participate in a division of the partnership assets. There is no proof whatever that there were assets which should have been distributed upon the firm's dissolution and no evidence that if there were such that each partner was not entitled to share therein. Another finding of the Board which is without justification in the proof is that there was no accounting for profits or losses. The fact is that such an accounting was had which was satisfactory to the parties interested. The Board also found that the partners were not permitted

to receive advances against services to be performed in the future. There is no such prohibition in the contract and nothing on which to base such an inference.

Much is made of the fact in respondent's brief that on the hearing Scott admitted that the partnership was formed to avoid the Workmen's Compensation Law. There is no illegality in such an agreement. We have not yet arrived at the time when artisans, especially in a period of depression, may not band together in a joint enterprise for their common welfare to escape oppressive taxation without having their actions penalized.

Where, as here, there is no dispute as regards the facts, the question whether a partnership exists is one of law for the court to determine. (20 R. C. L. 849.) Measuring the instrument before us by all tests known to the law it clearly appears that it satisfies all the requirements for the formation of a valid partnership. While no one fact or circumstance can be taken to be a conclusive criterion as to the existence of a partnership we have here all the indicia of such a relationship. We have the intent, the existence of which is deemed essential, to do those things which constitute a partnership. That intention controls where we have, as here, an agreement for the sharing of profits and losses. In the agreement before us each of the persons executing it intended to become a partner, each agreed to be a participator in the profits and losses and all had a community of interests *inter se*. Partnership contracts, like other contracts, are governed by the intention of the parties. Every partnership rests on the mutual consent of its members. (20 R. C. L. 831, 832; 47 C. J. 688.)

For the purpose of sustaining the Board's decision respondent emphasizes the fact that Scott was the firm's manager. That a valid agreement may be made under which one or more partners are given exclusive control over the management of the entire partnership business or particular functions or parts of the business is not even debatable. (*Sweet* v. *Morrison*, 103 N. Y. 235; 47 C. J. 784.)

Respondent cites *Matter of Glielmi* v. *Netherland Dairy Co.* (254 N. Y. 60) as an authority in her favor. That case arose under the Workmen's Compensation Law and has no application to the facts in this case.

The only question involved in the case cited was whether Glielmi was an employee or an independent contractor. The court held that he was an employee. The question of partnership was not involved.

The decision of the Unemployment Insurance Appeal Board should be reversed, with costs to appellants.

Decision affirmed, with costs to the Industrial Commissioner.